UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
Case No. 21-cr-10163-IT

**UNITED STATES OF AMERICA,**

vs.

**ROBINSON ALBERTO BAEZ-NOVA,**

    **Defendant.**
_____/

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through the undersigned Assistant United States Attorney, hereby files this Sentencing Memorandum. The Defendant, Robinson Alberto Baez-Nova, pled guilty to one count of sexual exploitation of children, in violation of Title 18 United States Code, Sections 2251(a) and (e), one count of distribution of child pornography, in violation of Title 18, United States Code, Section 2252A(a)(2)(A), and two counts of possession of child pornography, in violation of Title 18, United States Code, Section 2252A(a)(5)(B) and (b)(2). For the following reasons, the Government respectfully requests that the Court impose a sentence of 360 months (30 years) followed by five years of supervised release.

**I.    BACKGROUND**

As is outlined in more detail in the Presentence Investigation Report ("PSI"), on November 5, 2020, the Boston Police Department received thirteen National Center for Missing and Exploited Children ("NCMEC") Cybertip reports associated with Baez Nova's Google account. PSI ¶ 11. These Cybertips reflected that child pornography was uploaded to the Defendant's Google account beginning as early as November 2018 and continuing through August 2020. *Id.* A search warrant was executed for the Defendant's Google account, which revealed approximately 26 images and 360 videos of child pornography. *Id.* at ¶ 13. The account had videos of prepubescent children

being raped both orally and vaginally by adult men. *See id*; *see also* Complaint Affidavit ¶ 7 (Docket Entry ("DE") 1).

In April 2021, law enforcement obtained a search warrant for the Defendant's cellular phone, which was in the custody of the Nashua Police Department in connection with an October 15, 2020 traffic stop. PSI ¶ 14. A search of the device revealed approximately 244 images and 68 videos of child pornography. *Id.* at ¶ 14. These videos included children so young they were in diapers and toddlers performing oral sex on adult men. *Id.*

1. **Minor A**

In addition to the child pornography found on the Defendant's device, law enforcement also recovered a WhatsApp chat with an individual saved in the Defendant's phone as "Yohan Pato." *Id.* at ¶ 15. Through this investigation, Pato was identified as a 17-year-old minor male living in the Dominican Republic. *Id.* Pato had access to his niece, referred to as "Minor A" in the Indictment. *Id.* Minor A was nine years old at the time of this offense. *Id.* at ¶ 19. A review of the WhatsApp chat revealed that, for an extended period of time, beginning at least as early as July 2020, the Defendant paid Pato to sexually abuse Minor A at his request.

This conversation, which is attached in full as sealed Exhibit A, is excerpted and incorporated by reference into the PSI.[1] During this conversation, which was lengthy, the Defendant continually referred to Minor A as "his girlfriend." During the conversation, the Defendant and Pato discussed Minor A's ninth birthday, how much money the Defendant would send Pato for Minor A's birthday celebration, and Pato provided the Defendant with photographs

---

[1] Exhibit A was previously provided to the Court and filed under seal as Exhibit 4 in connection with the Government's Response in Opposition to the Defendant's Motion to Review of the Detention Order. (DE 34). The transcript is marked draft simply because, had this case proceeded to trial, a final version would have been prepared for that purpose.

2

of Minor A—who was very clearly a child—holding a number nine balloon on her ninth birthday. *See* Ex. A, at 2-5, 8-11.  In other words, there was no question as to the victim's age at the time of this offense.  Pato continually told the Defendant how much his family and Minor A needed money.  *Id.* at 5-6, 9-12, 14-16, 18, 21-23, 26-29, 32-35, 38, 40, 48-49, 52-56.  The Defendant, in turn, stated that he would send money to Pato and Minor A if Pato exploited Minor A by producing videos of Minor A's vagina and anus, among other things, and Facetiming the Defendant with Minor A.  *See id.*

During this conversation, the Defendant threatened to change "girlfriends" when he wasn't getting enough attention from Minor A.  *See id.* at 13 ("I am going to have to exchange her for another one.  I will have to change my girlfriend for another one, because she is neglecting me.").  The Defendant also bargained with Pato over the price of the photos and indicated that he would send more money if the conduct captured in the videos escalated.  *See id.* at 14-15 ("If you send me another one right now showing her hole well, I will send you 175 dollars . . . .  If not, it will only be 120-125."); *see also id.* at 21 ("So don't send the same thing each time . . . .  She has to change it up all the time . . . .  Her front and back holes should be visible.").

The requests that the Defendant made in exchange for payment were explicit.  In one request, for example, the Defendant told Pato, "Whenever she makes another video, tell her to open it with her hands to show her hole well.  Let's see if by the time I go there, my cock can fit inside her." PSI ¶ 20.  In another request, the Defendant said, "She should have gotten on all fours like that day on the last video you sent me, which shows her hole wide open, and she could stick her finger there . . . getting her finger inside and masturbating."  *See* Ex. A, at 53.

3

In addition to making explicit requests for videos of Minor A, the conversation continually referenced a desire to speak to Minor A directly over videochat or Facetime. On one occasion, the Defendant said, "I would like to be able to talk to her naked one day, and we'd talk on video-call, whoa, to jerk off good." *See* Ex. A, at 8. In another message, the Defendant told Pato, "You know, you video-call me, quickly, even if you are talking in the yard, she can wear some clothing, like a skirt and pull her panties to the side, open up right there and then that's it, while you tape her down there." *See id.* at 15.

The Defendant also constantly discussed his plans to sexually abuse Minor A in person. For example, on one occasion, the Defendant messaged Pato, "My girlfriend [Minor A] is too cute. Too bad I could not go and kiss that pussy . . . I really wanted to give her a kiss and eat her pussy . . . and I went to [unintelligible, hereinafter "UI"] but could not go over there. But I will soon go there again, tell her not to despair, not to cheat on me, that that pussy is mine." PSI ¶ 18. In another message on the same day, the Defendant said, "Once I get to eat Minor A's pussy, she will want me to live there so I'll go down on her every day. You'll see. I am going to go. I am going to go there. When I go back to Santo Domingo, I will go, I will stay in the capital, rent a car, and go straight there, so that after I will go down to [redacted location where Minor A lives]." *Id.* Again, the Defendant was referring to a nine-year-old girl. In another message that the Defendant sent in response to a video provided by Pato at his request, the Defendant said, "The last video you sent me, oh boy, my cock has not gotten down yet; it is still up, and it will be up until the day I go there . . . and that's without her fingering herself . . . if she would have fingered herself, damn, I would have jumped on a plane to go down there." *See* Ex A, at 31.

4

During the discussion, Pato expressed concern over what Pato and the Defendant were doing with Minor A and expressed a fear of getting in trouble. In response, the Defendant comforted him and told him that they were "with God." PSI ¶ 22. He assured Pato that he had never been "in that kind of trouble," even though he "had many - many girls." *Id.*

In a later discussion on October 3, 2020, the Defendant told Pato that he had also "fucked boys." He went on to say,

> [I] got inside a bunch of boys . . . that's . . . oh boy, one gets so much pleasure that one would like to be able to do it every day or all the time. I was lucky that one of the boys I used to do it with lived right next to my house. I was lucky that, he lived right next to my house, and I was able to do it with him every day. Sometimes, his mom and I were friends, he would have a sleepover by me, so you can imagine how much pleasure I got back then . . . we would spend the night together there.

PSI ¶ 23.

Ultimately, in response to the Defendant's explicit requests, Pato sent the Defendant five videos ranging from five to forty-eight seconds of Minor A being abused. These videos ranged from close-ups of Minor A's vagina to videos where a hand can be seen spreading Minor A's vagina apart. PSI ¶ 24. On October 15, 2020, the day the Defendant was arrested during a traffic stop in New Hampshire, the Defendant had messages from Pato on his phone.

2. **Minor B**

Aside from the messages with Pato regarding Minor A, there was also a lengthy WhatsApp chat with Minor B, who was identified during this investigation as a 14-year-old female residing in the Dominican Republic. PSI ¶ 25. The Defendant communicated with Minor B directly. The conversation between the Defendant and Minor B is excerpted in the PSI and is attached and incorporated by reference as sealed Exhibit B.[2]

---

[2] Exhibit B was previously provided to the Court and filed under seal as Exhibit 5 in connection

At the outset of the conversation, the Defendant and Minor B attempted to make plans to meet up in person in the Dominican Republic.  Ex. B, at 2.  These plans to meet in person were only hindered when the Defendant's car broke down and he returned to the United States.  *Id.*

In a follow up discussion on August 22, 2020, the Defendant asked Minor B, "Hey, I have a question and I want you to answer me . . . .  If I would have gotten there and seen you, would you have come for a ride with me by yourself, or to be clearer, would you have let me eat your pussy, even without having sex, tell me the truth?"  *Id.* at 3.  Minor B replied, "Yes."  *Id.*  The Defendant told Minor B that he planned to go back to the Dominican Republic in December so their "date was pending."  PSI ¶ 26.  He said, "We will go out, because I want to eat that little pussy again, which is so cute . . . .  I mean, I haven't seen it in a while, I haven't seen it since the time you sent me the picture, I haven't seen it after that . . . but I know that you always keep it nice."  *Id.*  At another point in the conversation, the Defendant indicated he was considering "buying a ticket to go there for a weekend just to have sex with [her] at least 2-3 times."  *See* Ex. B, at 13.

The Defendant offered to send Minor B money that she could use for basic necessities, including food, if she would send him videos of herself.  PSI at ¶ 26.  He solicited specific images and videos of Minor B, including videos of her masturbating and having sex with other men.  *See* Ex. B, at 7, 10, 12, 18, 19.  He told her that, "the more videos and the better the video, the more money you will receive, my pretty girl."  *Id.* at 11.  The Defendant went on and said, "[A]nd more if you send me a video having sex, that is long and shows it coming in and out, and the person

---

with the Government's Response in Opposition to the Defendant's Motion to Review of the Detention Order. (DE 34).  As outlined above, the transcript is marked draft simply because, had this case proceeded to trial, a final version would have been prepared for that purpose.

getting aroused, I can send you up to 12 thousand pesos. If it's of girls younger than you and you record them well, I can also send you 10,000." *Id.* at 12. The Defendant told her to make videos with her girlfriends and he would send her money and Minor B could give them a cut of her profits. PSI ¶ 28. The Defendant advised Minor B that her friends wouldn't "say no, she won't not do it because you are a female, and she'd know that no one will put their hands on her because it's you, and – and – and she will get money anyway, you understand?" *Id.* The Defendant told Minor B that if she sent him videos and pictures and did video calls with him, she could have "anything she want[ed]" and she would be the "it" girl because she would always have money." Ex. B at 7.

The Defendant talked about having sexual interactions with Minor B in the past. *See* PSI ¶ 27 ("[T]he first time that I ate your pussy, oh girl, I will never ever forget that . . . and when I sat you in the chair there and I was doing it with you, oh girl, I remember that all the time and jerk off while thinking about that."). At another point in the conversation, when the Defendant is talking to Minor B about her first time having sexual intercourse, he said, "I used to fool around with you but did not get to put it inside you because . . . you were like 9 years old when I was with you." *Id.* at 14.

The Defendant groomed Minor B, telling Minor B about other children who he had exploited in the past, including Minor A. *See* Ex B. at 10-11. Additionally, the Defendant sent Minor B videos of child pornography, including a video of Minor A, and a video of a prepubescent female being vaginally raped by an adult male. PSI ¶¶ 31-32. As included in the PSI, the Defendant told Minor B about Minor A. *Id.* at ¶ 29. The Defendant told Minor B that Pato had access to his nine-year-old niece and he told Pato to send him videos but Pato was fearful that Minor A would tell someone what he was doing. *Id.* The Defendant told Pato, "tell her you are

7

going to give her money, and she won't say anything." *Id.* The Defendant admitted to Minor B, and, in fact, boasted about the videos Pato had made of Minor A at his request and the money that the Defendant sent to Pato for these videos. *Id.* at ¶ 29. The Defendant's requests for sexual content from Minor B were relentless and repetitive.

## II.     ARGUMENT

Due to the seriousness and the nature of this offense, the Defendant's guidelines are life imprisonment. Because life is not allowed by the statutes to which the Defendant pled guilty, his guideline range is ninety years' imprisonment. The Defendant faces a mandatory minimum of 15 years. The Government is recommending a sentence of thirty years in this case. This is an appropriate sentence that reflects the § 3553(a) factors, including the seriousness of the Defendant's conduct, the need for punishment, the history and characteristics of the Defendant, and the need to protect the public from future crimes of this Defendant—both here in the United States, and in the Dominican Republic where the Defendant will likely be deported upon the conclusion of his sentence.

The Defendant, Robinson Alberto Baez Nova, is a sexual predator with a clear predilection for minors. The facts of this case, which have been recounted numerous times, truly speak for themselves. The Defendant preyed on young, impoverished females and groomed and exploited them with promises of money. If the Defendant was not arrested on October 15, 2020, there is no question that Minor A's abuse would have continued and worsened at the Defendant's request. Similarly, if the Defendant had been able to travel back down the Dominican Republic in December 2020 as he planned, Minor A and Minor B likely would have been subject to hands on abuse by the Defendant in exchange for money.

Turning first to the exploitation of Minor A, as is evidenced by the descriptions of the videos made by Pato at the Defendant's request, outlined in paragraph 24 of the PSI, these videos escalated over time. The Defendant repeatedly told Pato to increase his abuse of Minor A in the images that were being made for the Defendant. The Defendant directed Pato on numerous occasions to, for example, insert a finger into Minor A's vagina in the videos that he was making. The Defendant also continually threatened to find another female to fulfill his needs if Pato didn't produce the images that he requested. Minor A was the daughter of a woman that the Defendant knew from the Dominican Republic. The Defendant prayed on Pato, this woman's nephew and a minor himself, who was living under impoverished circumstances and would do anything for money. The Defendant promised to provide Pato with money if he kept the videos of Minor A's abuse flowing to fulfill his own sexual desires. The Defendant's own words, outlined above, inform the Court about the depths of the Defendant's depravity. The Defendant told Minor B that he convinced Pato to make these videos of Minor A by telling Pato to essentially bribe Minor A with money in return for her silence. The discussion with Pato leaves no question about the Defendant's plan, which included meeting Minor A and engaging in sexual conduct with Minor A in person in the Dominican Republic. This plan was only thwarted by the Defendant's arrest by law enforcement.

While the Defendant may not have been the individual physically manipulating Minor A into various positions for his own pleasure, his role was more important than that of the cameraman—he was the director of this abuse. Without the Defendant, his offers of payment, and his grooming of both Pato and Minor A, this abuse would not have taken place. The Defendant is responsible for every action that was taken by Pato to abuse Minor A. The Defendant needs to be

held accountable for his actions and the sentence should be reflective of the need to protect children like Minor A from the Defendant.

The Defendant also preyed on the needs of Minor B, a child who he met when Minor B was eight years old, again, under impoverished circumstances. The Defendant groomed Minor B by offering money to her to make videos not only of herself, but of her friends as well. He attempted to groom Minor B to groom other females in order to fulfill his own sexual desires. He asked for videos of Minor B having sex with other people and videos of Minor B masturbating for his own pleasure. He continually spoke to Minor B about his plans to have sex with her in the future and referenced back to sexual encounters they had in the past. In his efforts to groom Minor B, the Defendant sent Minor B videos of child pornography, including a video he created of Minor A. The Defendant created and then trafficked in his own child pornography. This behavior is reprehensible and shows the cyclical nature of this offense where a sexual predator creates child pornography by exploiting a particular minor and then uses that child pornography to groom other victims.

The Defendant's actions in this case were not a mistake, they were not a temporary lapse in judgment, or an anomaly in an otherwise law-abiding life—the Defendant made choices for years that capitalized and preyed on the vulnerability of children and led him to the conduct captured in the chats with both Pato and Minor B. The Defendant needs to be held accountable for this conduct and this conduct calls for a significant sentence.

Not only did the Defendant commit the acts outlined above, he also downloaded child pornography. Google flagged uploads to the Defendant's account beginning in 2018. He amassed a collection over years, and only ceased his conduct when he was arrested by law enforcement in

October 2020. The victims depicted in these videos and images suffered a very real harm and the dissemination of these images and videos that capture the worst moments of their lives exacerbates that harm. Not only does it constitute the continued invasion of privacy, but the dissemination of these images and videos creates a market that leads to the creation of these images in the first place. *See United States v. Tillmon*, 195 F.3d 640, 644 (11th Cir. 1999). These videos are also used to groom children to engage in the conduct depicted in the images and videos found in the Defendant's possession. We can see that pattern at work in the Defendant's conduct with Minor A where the Defendant distributed a video of Minor A's abuse to Minor B during his effort to groom Minor B.

The videos and images of child pornography victims' abuse haunts them for the rest of their lives. The Defendant perpetuated this abuse against Minor A by creating and then disseminating videos of her abuse.

One of the victims in the Defendant's collection of child pornography, "Vicky," addressed the harm done to her by people like the Defendant who receive and possess images of her abuse.[3] In her victim statement she said:

> I live everyday with the horrible knowledge that many people somewhere are watching the most terrifying moments of my life and taking grotesque pleasure in them. I am a victim of the worst kind of exploitation: child porn. Unlike other forms of exploitation, this one is never ending. Everyday, people are trading and sharing videos of me as a little girl being raped in the most sadistic ways. They don't know me, but they have seen every part of me. They are being entertained by my shame and pain.
>
> My world came crashing down the day I learned that pictures of me being sexually abused had been circulated on the internet. Since then, little has changed except my understanding that the distribution of these pictures grows bigger and bigger by the day and there is nothing I can do about it . . . . I can never feel safe so long as

---

[3] The Defendant possessed two images or videos of Vicky.

>my images are out there; every time they are downloaded I am exploited again, my privacy is breached, and I feel in danger again.

*See* Vicky Victim Impact Statement.

The Defendant also possessed 3 images or videos of "Jenny." Jenny was only seven when she was molested and photographed for two years. In her victim impact statement, she said:

>I worry about the pictures of me that are out there and I hate that others see them. I have feared over the years that someone would recognize me in public. I wish only that every single one can be found and destroyed someday. It is upsetting thinking about them and I want them to go to jail for doing it.

*See* Jenny Victim Impact Statement. The Defendant's sentence should be reflective of the harm done to the victims depicted in the images and videos that he possessed.

The Defendant in this case has shown himself to be a manipulative serial offender with a demonstrated victim demographic—young children living in the Dominican Republic. There is a need in this particular case to not only protect the public from future crimes of this Defendant, but to adequately punish the Defendant's conduct, which is truly reprehensible. Moreover, there is a grave need in these types of cases for sentences that reflect the seriousness of creating, distributing, and possessing these images, not only to provide punishment and specific deterrence, but also to promote respect for the law against this very conduct.

**III.     CONCLUSION**

For all of these reasons, the Government would ask that the Court impose a sentence of 360 months (30 years), followed by 60 months of supervised release, and impose the negotiated amounts of restitution included at paragraph 35 of the PSI.  Such a sentence would be sufficient, but not greater than necessary, to reflect the seriousness of the offense and the goals of sentencing.

                Respectfully submitted,

                JOSHUA S. LEVY
                ACTING UNITED STATES ATTORNEY

By:   */s/ J. Mackenzie Duane*
       J. Mackenzie Duane
       Assistant United States Attorney

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on January 16, 2024 I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

>*/s/ J. Mackenzie Duane*
>J. Mackenzie Duane
>Assistant United States Attorney